By the Court. . Bosworth, J.
The objection, that the certificate of the notary could not be admitted as evidence, is untenable. To exclude it, the statute requires the defendant “to annex to his plea an affidavit, denying the fact, of having received notice of non-acceptance, or of non-payment, of any such note'or bill.” (2 R. S. 2d edit. 212, § 46.) The defendant insists, that the answer, in substance, contained such a denial; and that the answer, being verified, it was as effective, as a distinct affidavit annexed to it, to deprive the plaintiff of all right to read the - certificate. To this there are two answers:—
First. The answer denies “that due notice of such demand and non-payment was given to them, or either of them,” (the endorsers.)
It does not, as the statute requires, deny that notice was “ received.” An affidavit, in the words of this part of the answer, would not preclude the certificate from being read as evidence.
Second. The court has no right to interpolate words into the statute. The statute was not designed to affect the rules of pleading, nor to make a plea or answer perform any new office. An answer, merely denying that a notice was received, would deny an immaterial fact, and one not averred. If it did not deny that due notice had been given, the plaintiff would be entitled to judgment on the answer, if his right to recover depended, according to the pleadings, solely on the question, whether due notice had been given to the endorsers.
*211 It cannot affect a plaintiff’s right to recover, that the endorser never received notice of protest, if it is proved or is admitted to have been served, in time, and in a proper manner.
An answer can contain, only a general or specific denial of each material allegation of the complaint controverted by the defendant, or a statement of new matter constituting a defence or counter claim. (Code, § 149.)
A denial, of having received notice of protest, is not a denial of any allegation of the complaint; nor is it a statement of any new matter, constituting a defence or counter claim.
A party can make such an affidavit as the statute requires, provided no notice has been received. Whether it has, or has not been received, is known to the endorser personally. When an endorser has not actually received notice, he has a right to infer that none has been given. He may well be supposed to be ignorant of the name of the witness who will be called, or of the particular evidence that will be attempted to be given, to prove notice.'
If a notice has been actually received, he must know when it was served, if the service was personal. If it was served by mailing it, the post-mark will show the time of service. In the latter case, he can prepare for the trial of the question of due notice.
If he has not, in fact, received any notice, he will labor under a disadvantage, in preparing for the trial. The statute malees it incumbent upon him, in order to deprive a plaintiff of the right to use a notary’s certificate, to annex to his plea, or answer, an affidavit, denying the fact of having received notice. To hold, that he may work the same result by other means, is to modify the statute, and make pleadings perform an office not known prior to the Code, and, impliedly, if not, expressly, prohibited by the Code itself.
The objection, that the instrument, sued upon, is not a negotiable promissory note, is deserving of more consideration.
We do not think there is any thing in the objection, that it is, in effect, a contract to pay the difference, between the amount of the proceeds of the bonds, after a sale thereof, and the amount of the note. The holder is not, by its terms or legal effect, precluded from suing upon it, until after the bonds shall have been sold. When the day of payment had passed, his right of action was *212 perfect, and a recovery might be had against all the parties, for the whole amount, if there was no objection to a recovery, except the one, that the bonds had not been sold.
The only important question, is this: Is an entire contract, part of which is, in form, a good promissory note, but which also contains a special contract, in relation to the money promised to be paid, a good promissory note, negotiable by statute, as to so much of the contract as is, in form, a promissory note ?
By this instrument, ten bonds are pledged, as security for the payment of the $5,000. By it, Elisha Peck is made a trustee, to hold and sell the bonds, and apply the proceeds. The mode of sale is agreed upon; and, on pursuing the mode specified, the maker agrees, to pay the balance that may remain, after applying the proceeds in satisfaction of all expenses of the sale, and in reduction of the principal and interest due thereon. See Allen v. Dykers & Alstyne, (3d Hill, 593.)
The terms of this contract do not modify that part which contains a promise to pay, absolutely, to the order of the persons named in it, a sum certain, and on the day specified.
The only objection is, that it contains a contract, collateral to the promise to pay the $5,000, by which the maker of the paper may be subjected to a liability, which the law would not impose, upon the mere fact, of a deposit of the bonds as collateral security, without any special agreement as to the manner of selling them.
It will hardly be pretended, that, in the absence of any special agreement, the pledgee of stocks, deposited as security for the payment of a note of the pledgor, discounted by him, could sell, in the manner, and upon the notice, specified in this contract, and apply the proceeds, first, to pay all expenses of such a sale, and the residue on account of the principal and interest, and then, as a matter of course, recover the balance due on the note. The pledgor of the stocks would not be concluded by a sale, made in such a manner, and on such a notice, in the absence of any special contract in relation to it.
It cannot properly be said, therefore, in this case, as was said in Wise v. Charlton, (4 Ad. & E. 786,) that the instrument recites, or contains nothing, except what the law would imply. In that case, the note merely recited the fact that title deeds had been deposited as security.
*213 The essentials of a negotiable promissory note, as stated in elementary books and in adjudged cases, are, that it must be payable at all events, not dependent on any contingency, nor payable out of a particular fund; and that it must be for the payment of money only, and not for the performance of any other thing, or in the alternative. (Cook v. Satterlee, 6 Cowen, 108.)
In Bolton v. Dugdale, (4 Barn. & Ad. 617,) the instrument was, in form, a promissory note, as to a promise to pay £30 and interest. By it, the maker also promised to pay a sum, which was uncertain, to a third person, in part of interest, and “ the remaining stock and interest,” or the balance, on demand. This was held not to be a promissory note. The sum payable to the third person being uncertain, left; the sum, payable to the payee, uncertain. That case, therefore, does not touch the proposition, that a note ceases to be negotiable, because it contains a collateral contract, in no way modifying the terms, or legal effect, of that part, which, by itself, is a promissory note.
In Davies v. Wilkinson, (10 Ad. & E. 98,) the instrument contained a promise to pay to Charles Davies or order £695, in four instalments, one of £200, and two £150 each, and one of a £100, at times specified, and the remaining £95 was to go as a set-off against certain matters specified. The court held it, in form, a promissory note, as to the sum of £600.
Lord Denman said, “ It is a note, up to a certain point, but it ends, ‘ £95 to go as a set-off for an order of Mr. Reynolds to Mr. Thompson, and the remainder of his debt, owing from C. Davies to him.’ I think that takes from it the character of a promissory note, and makes it an agreement.”
Littledale, J.—“ To be a promissory note, the writing should be One entire instrument. Here the instrument, as to £95, is not a promissory note.”
Patteson, J—“ This is an instrument to pay £695, in the whole, by the means stated. The £95 was not to be paid to Davies, and could not be payable to his endorsee: the instrument, therefore, was not a promissory note.”
There may be said to be this difference between that case and the present. In that case, the whole sum promised to be paid, was not payable to the payee named in it, or to his order, or to bearer. Part of an entire sum promised to be paid, was not pay *214 able in money, nor to the person to whose order the residue was made payable. In this case, the whole sum is payable in money absolutely, and to the order of two of the defendants.
In Storm v. Sterling, (28 E. L. & E. R. 108,) the question was raised upon an instrument, in terms, very much like-those of the one now under consideration. The court, after stating the arguments for and against the proposition, that the instrument was a promissory note, forebore to decide the question. It is, probably, a just inference, that the- court was not willing to express an opinion that the instrument was clearly a promissory note, unaffected ,as such, by the collateral, or additional contract which it contained. Some of the remarks of Lord Campbell, however, indicate that he inclined to that view of its character.
In Willoughby v. Comstock, (3 Hill, 389,) an action was brought by an endorsee of an instrument very similar to the one in question, but less special in its provisions, against the maker, and a recovery was had; but the point, that it was not negotiable, was not taken.
In the present case, the collateral, or additional contract, which the instrument embodies, relates solely to the money promised to be paid. It provides a security for the payment of the money, prescribes'the mode of converting the security, how the proceeds shall be applied, and the extent of the maker’s liability under the collateral contract, after the security shall have been exhausted in the manner stipulated.
If this collateral contract had been written on a separate instrument, although executed and delivered cotemporaneously with the note, the fact of its having been so made, would not affect the negotiable character of the note itself. The pledge, or collateral security for the payment of the note, would in equity belong to every successive bona fide holder of the note for value. Although, therefore, the endorsement of .the note would not, in law, transfer any title or right to the security created by the collateral contract, yet, in equity, it would work such a transfer. As this collateral, or additional contract, does not, in any respect, modify any clause of the note itself, nor affect in any manner the liability of any party to it, as such party, (unless it deprives the note of its negotiable character as such, which is the point to be determined,) we do not see that any injuridhs consequences can result, from hold *215 ing, that the note, notwithstanding the addition of such contract, continues as to its negotiability, unaffected by it.
Such'an instrument is quite different from one which, in addition to a note perfect in form, should contain a contract having no relation to the money promised to be paid, and wholly independent of it. If the additional contract was for the sale or leasing of land, or the sale or exchange of personal property, or related to any other distinct and independent subject, there would be many reasons for declaring the instrument not negotiable, which can have no application to that under consideration.
Instruments like the present, are of common use. The persons endorsing them, undoubtedly intend to stand in the position, and to incur the liabilities of endorsers of commercial paper, and if charged at all, to be charged by the means by which the liability of all endorsers becomes fixed. Allowing an instrument, like that in suit, to be treated and enforced as a negotiable note, cannot be made a precedent for holding instruments negotiable, which, in addition to containing a promise for the absolute payment of money, contain promises for the performance of other acts, having no reference to, or connection with, the money promised to be paid.
We are of the opinion, that the plaintiff is entitled to enter a judgment on his verdict.