WILLIAM H. TOWNE *vs.* LEWIS RICE.

Suffolk. March 7.— 8, 1876. March 14, 1876.— Feb. 2, 1877.
AMES & MORTON, JJ., absent.

Under the bankrupt act, U. S. St. of 1867, *c.* 176, § 21 ; U. S. Rev. Sts. § 5106 ; a plaintiff having a valid attachment upon the property of a defendant, who, pending the action, but not within four months after the attachment was made, has instituted proceedings in bankruptcy, is not entitled to a special judgment, to be enforced only against the attached property, until the question of the debtor's discharge is determined, if there is no unreasonable delay on the part of the defendant in endeavoring to obtain his discharge.

The maker or indorser of a promissory note cannot, as against an indorsee of the same in this state for value before maturity and without notice, show that the note, although dated at Boston with intent that it should be a Massachusetts contract, was actually made in New York, and, on account of illegal interest, was void under the usury law of that state.

An instrument, which, in its terms and form, is a negotiable promissory note, does not lose that character because it also recites that an additional rate of interest will be paid "after due ; " that the maker has deposited certain certificates as collateral security for the payment of the note, and states the terms upon which they have been deposited and upon which they may be sold by the holder on the non payment of the note.

A promissory note indorsed " L. R., receiver," binds him personally

CONTRACT, by an indorsee against Lewis Rice and William J. Harolson as makers, with a count against Rice as indorser, of the following instrument, signed "Lewis Rice, Wm. J. Harolson, Receivers," and indorsed "Lewis Rice, Receiver."

"$11,520$\frac{42}{100}$. Boston, July 1, 1873. Four months after date we promise to pay to Lewis Rice, Receiver, or order, eleven thousand five hundred twenty and $\frac{42}{100}$ dollars, for value received, with interest at the rate of two per cent. per month after due, having deposited with the holders as collateral security, with authority to sell the same at the broker's board, or at public or private sale, at his option, on the non-performance of this promise, and without notice, twenty-three (23) receivers' certificates of indebtedness $1000 each of the Alabama and Chattanooga Railroad."

The writ was only served on Rice, whose answer contained: 1st, a general denial; 2d, that the instrument declared on was not a negotiable promissory note; 3d, that it was made, executed and delivered in the city of New York, and was void under the usury laws of that state.

At the trial in the Superior Court, before *Wilkinson*, J., the defendant Rice contended that the instrument declared on was not a negotiable promissory note, and that he was not personally bound thereon, as his signature was that of a receiver only, but the judge ruled otherwise.

It appeared that the defendants were receivers of the Alabama and Chattanooga Railroad Company, appointed by the United States Circuit Court in Alabama, and were engaged in operating and equipping it, and in borrowing money, to be used upon the railroad, upon their notes, with certificates of indebtedness, issued under the order of said court, pledged as collateral security.

The defendant Rice was allowed, against the plaintiff's objection, to show that the note in suit was actually a New York contract, made and given there, and to impeach it for alleged usury under the statutes of New York, which were put in evidence. He also introduced evidence tending to show that he resided in Boston; that the note in suit was executed and delivered in New York in renewal of three notes then due and payable in New York; and that it was dated "Boston" for the purpose of avoiding the usury law of New York.

The plaintiff introduced evidence tending to show that, although the note in suit was made in New York, it was agreed that it should be dated at Boston, and that it should be a Massachusetts contract subject to Massachusetts laws; and that the plaintiff took the note as security for a debt, before maturity and without knowledge of the circumstances under which it was made.

The plaintiff contended that the note in suit was on its face a Massachusetts contract, being dated, and, as he contended, payable in Boston, where the defendant resided and did business; that the defendant must prove the transaction in question to have been a New York contract, made under such facts and circumstances as would bring it under the operation of the statutes of that state in evidence, for its construction and validity; that parties, who reside as citizens and do business in other states, may, while in the State of New York temporarily, negotiate and contract with each other for a loan of money, by one of them to the other, and not necessarily be subject to the laws of New York in regard to usury; that they may contract and fix a rate of interest with reference to the laws of the state where the parties reside and do business, and under which the agreed rate is legal, provided it is done in good faith, with no intention and without any shift or device to evade or violate the laws of New York; that the note, if void for usury under the laws of New York, was good in the hands of an innocent third party in Massachusetts, who took it here before maturity and for value; that the St. of 1863, *c.* 242, would apply; that the defendant Rice could not, as indorser, impeach the note in the hands of such holder; that if he made the note in the present form in known violation of the laws of New York, and for the fraudulent purpose of thus concealing the fact and giving it currency in the market, and the plaintiff was misled and deceived thereby to his hurt and for that reason, and took the note for value before maturity and without notice express or implied, the defendant was estopped to make this defence of usury as against him, at least to the extent of the debt as collateral security for which he took and still holds the note.

The judge ruled, as matter of law, and under the statutes of New York, which were introduced in evidence, that the note was

absolutely void on the ground of usury, both as against the original party and any innocent holder, for value, and before maturity, and that the plaintiff could not recover against the defendant Rice, either as maker or indorser, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

Before the exceptions were heard, the defendant was duly adjudged a bankrupt, and moved this court that further proceedings be stayed to await the determination of the court in bankruptcy. It was admitted that the plaintiff had brought his action more than four months before the proceedings in bankruptcy, and had made an attachment which was not dissolved by such proceedings.

*R. D. Smith*, for the defendant.

*A. A. Ranney*, for the plaintiff, contended that the case was distinguishable from *Ray* v. *Wight*, 119 Mass. 426, as in that case the Superior Court refused to stay proceedings and ordered judgment for the plaintiffs; while in the case at bar the plaintiff's claim was disputed, and could not therefore be proved against the estate of the bankrupt until the question of the defendant's liability was determined in the Superior Court, and could not be determined there until these exceptions were disposed of; that if the exceptions were heard and sustained, judgment for the plaintiff would not follow, as the Superior Court would then have the power to stay proceedings.

BY THE COURT. This case is not distinguishable from *Ray* v. *Wight*, 119 Mass. 426, and for the reasons there given the proceedings must be                                         *Stayed.*

The plaintiff thereupon procured from the District Court of the United States, after notice to the defendant and to his assignee in bankruptcy, an order that the suits pending in the courts of this Commonwealth by the plaintiff against the defendant upon certain promissory notes or other writings might proceed to judgment for the purpose of ascertaining the amounts due. Upon the production of a certified copy of that order THIS COURT, on the application of the plaintiff, and with the assent of the defendant and of his assignee, ordered this case to be argued, and it was argued by the same counsel.

DEVENS, J. The note in suit was made and delivered in New York, although there was evidence that it was dated at Boston with the intent that it should be a Massachusetts contract. The consideration for it was three similar notes payable in the city of New York which had become due, and upon which a rate of interest usurious under the laws of New York had been reserved. There was no further consideration, and upon it also a usurious rate of interest was reserved. By the statutes of New York all contracts by which a greater rate of interest than that allowed by law is taken, reserved or agreed to be taken, are void. 1 N. Y. Sts. at Large, 725, tit. 3, § 5. If we treat this, between the original parties, as a New York transaction in all its parts, and deem that, as between them, the validity of the contract, as affected by the legality of the transaction upon which it is founded and in which it took its inception as a contract, must be determined by the law of the state where the transaction took place, there still remains the question whether the plaintiff, who offered evidence that he had purchased this note in Boston in good faith and for full value before maturity, is so affected by those circumstances that he cannot recover.

If notes are void because tainted with usury, they are ordinarily so in the hands of an innocent indorsee, the law operating upon and attainting the contract itself, attaching thereto the consequences of the illegal act. *Bowyer* v. *Bampton*, 2 Stra. 1155. *Lowe* v. *Waller*, 2 Doug. 736. *Bridge* v. *Hubbard*, 15 Mass. 96. *Kendall* v. *Robertson*, 12 Cush. 156.

The defendant seeks, as against an innocent purchaser in Massachusetts before maturity and without notice, to falsify and contradict the note signed by him, by proving that, although dated at Boston, where it would be valid notwithstanding the amount of interest reserved, it was actually made in New York, for the purpose of then proving, by the statutes of New York, that it is void. Unless he can be admitted to show that it was thus made, he cannot avail himself of the defence which he desires to maintain. No case to which we have been referred, or which we have been able to find, goes so far as to permit such proof.

It is contended on his behalf that *Bayley* v. *Taber*, 5 Mass. 286, is precisely in point and decisive of this question. We do **not so** consider it. It was there held, where a statute of **this**

state had enacted that promissory notes of a particular descrip‑ tion made or issued after a certain day should be utterly void, that it was competent for the makers, in an action brought against them upon notes bearing date before such day, to prove that they were in fact made and issued subsequently. The ground upon which that decision rests is, that, as the Legislature had declared notes so made or issued to be void, any other result would operate to practically annul the statute, the policy of which had been determined. The case goes so far as to hold that if, by the law of Massachusetts, such a contract as that in suit was void if made here, it might be shown by proof that, al‑ though apparently made in another state, where such a contract would be valid, it was actually made here.

This is quite a different proposition from holding that it may be shown that a contract, apparently made here, and valid if so made, may be shown to have been made elsewhere, for the pur‑ pose of then proving that it would be void by the laws there ex‑ isting. In the first case, the defendant is not estopped, because the *lex loci* is to be enforced, and, for reasons of public policy, he may urge his own illegality, even against those innocent of any; in the latter, he is estopped, because no reasons of public policy require a tribunal to permit a party to contradict the instrument he has signed, in order thus to sustain foreign laws, of which it has no judicial knowledge until they are proved to it as facts, where by so doing injustice would be done to an innocent party.

*Jordaine* v. *Lashbrooke*, 7 T. R. 601, is the leading case upon the subject of the right of a party to a bill of exchange to show that it was made in violation of law. The bill purported to be dated at Hamburg, but was actually made in London, and, when so made, required a stamp, for want of which it was void. It was there held that the fact that the bill was made in London might be proved, in order that so ready a means of evading the English revenue laws might not exist. To the same effect are *Steadman* v. *Duhamel*, 1 C. B. 888, and *Abraham* v. *Du Bois*, 4 Camp. 269. Had the bill been sued in Hamburg, the courts of that city, under no obligation to enforce the English revenue laws, might properly have held that the defendant was estopped by the date he had affixed to the bill from showing that it was made at another place, where by a local statute it was void.

There is evidence that this note was intended to be a Massachusetts note, and bore date of Boston, in this state; that it is signed and indorsed by the defendant, a resident of this city; and that the plaintiff here purchased it for value and in good faith. If such prove to be the facts, the defendant should not be permitted to show, for the purpose of avoiding the note, that he made it in New York. If it is what it purports to be, it is good against any defence of usury. In order to aid in enforcing a different system from our own, the defendant should not be allowed to show, to the injury of an innocent party, that it is not what it purports to be.

We have not deemed it necessary to inquire whether, under the St. of 1863, *c.* 242, the defence of usury can properly here be made, as we are of opinion, upon the ground above stated, that the learned judge was in error in ruling, under the statutes of New York in evidence, that this note was absolutely void on the ground of usury, as against an innocent holder for value who had here purchased it before maturity, and that there could be no recovery by him.

We have discussed this question, assuming the instrument in suit to be a negotiable promissory note. It was ruled at the trial that it was so. While no exception to this ruling is brought before us, the question has been discussed, and must necessarily be now considered, as it would be superfluous to send the case back for a new trial if it is to be disposed of upon the principles which would govern it if the original parties were the parties to this suit.

The instrument sued on is a promise to pay a definite sum of money at a specified time, and, as it is payable to order and indorsed by the payee, must be considered a negotiable promissory note, unless this character is altered by that which follows the promise. An additional rate of interest is provided for if the note shall not be met at maturity; but, as the sum to be paid is still definite and payable absolutely, this cannot affect the negotiability.

The note contains also an addition, which is a recital of the fact that certain certificates have been deposited as collateral security for the payment of the note, of the terms upon which they have been deposited, and upon which they may be disposed

of by the holder, who has received them. A statement that collateral security has been deposited for the performance of the promise contained in a promissory note is a recital only which does not affect its negotiability. *Wise* v. *Charlton*, 4 A. & E. 786. *Fancourt* v. *Thorne*, 9 Q. B. 312. Nor, when the statement annexed contains also a recital of the terms upon which the deposit was made, should it have that effect. It affords evidence by which the contract might be shown, but the right to dispose of the collateral security is not derived therefrom, but from the contract which was made with the depositary of such security. Such a recital does not render the amount to be paid, the time when, or the person to whom payable, uncertain. If it did, undoubtedly the instrument would not be a negotiable promissory note. *Bolton* v. *Dugdale*, 4 B. & Ad. 619. *Stults* v. *Silva*, 119 Mass. 137.

The only contract as to collateral security, recited in this note, relates to what shall be done after the note becomes due, if it is unpaid. If, as between the maker and the original holder who received the collateral security, there has been any payment before the note became due, by the receipt of sums collected upon the security, that cannot affect one to whom the note has been transferred before maturity, without notice. It will have been done in pursuance of some agreement which does not appear on the face of the note, and of which therefore he had no notice. He is entitled to occupy the same position that he would if the holder of a negotiable note in the ordinary form had received a sum which, as between himself and the maker, should be applied to the note, and had afterwards transferred it to him, without notice and before maturity.

Nor does the fact, if this note is unpaid, that the amount due after maturity will depend upon the action of the holder of the collateral securities, by reason of his option to sell and realize such securities, and will thus be uncertain, destroy its negotiable character before maturity. After a negotiable note has become due, it is still transferable, although it has lost the great characteristic which gives value to it as commercial paper. The purchaser, although he may sue upon it in his own name, then receives it with full notice of all defects, and subject to every equitable defence which the promisor may make against the

promisee. If the note embodies a promise to pay money, definite as to time, person and amount, it is not the less negotiable, because, if unperformed at maturity, certain collateral securities, the proceeds of which will then be applicable to the note, may be realized, and, when realized, will affect the amount which will thereafter be due on it.

The case of *Arnold* v. *Rock River Valley Railroad*, 5 Duer, 207, goes much further than we are required to do, in holding the instrument sued on to be a negotiable promissory note. The instrument, there held to be such, contained not merely a recital of the fact that collateral security had been given, and of the terms upon which it had been given, but itself furnished the authority by which the holder (who was not the promisee) could dispose of it, prescribed the mode in which he should convert it into money, and defined the extent of the maker's liability, after the security should have been availed of. Whether, if the contract as to the collateral security and the sale of it had been made by the instrument sued on, it could still be treated as a promissory note, need not now be decided. The only contract made by it is a contract to pay the money promised, and it is not altered or modified by that which is recited, but continues to be an absolute promise to pay to the person named, or his indorsee, a definite sum at a fixed time. It was therefore correctly ruled at the trial, that the promise contained in the instrument was to be treated as a negotiable promissory note.

It was also correctly ruled that the fact that the defendant was the receiver of a corporation, and so described himself, would not prevent his being sued individually. The contract was his own, and the word "receiver" annexed to his name was a *descriptio personæ* merely. *Fiske* v. *Eldridge*, 12 Gray, 474.

Upon the ground heretofore considered, as to the defence of usury, the                                   *Exceptions are sustained.*