# PHILANDER MOTT, Plaintiff, *v.* THE HAVANA NATIONAL BANK OF HAVANA, N. Y., Defendant.

*What instrument is a negotiable note—Rights and duties of a conditional vendor of property—when he is liable for the full value of the property if he retake it.*

One Nighthart, having purchased an engine from the American Engine Company, gave to it a note in the following form:

"Fourteen and one-half months after date I promise to pay to the order of the American Engine Company $450, at seven per centum, at the Havana National Bank, at Havana, N. Y., value received, being in part payment for a portable engine, which engine shall be and remain the property of the owner of this note, until the amount hereby secured is fully paid."

This note having been indorsed by one Woodward, for the accommodation of Nighthart, was transferred by the company to the plaintiff, who brought this action against the defendant, with whom the note had been deposited for collection, to recover damages for its neglect to properly protest the same and notify the indorsers thereof.

*Held,* that the note was a negotiable one, and that it was the duty of the defendant to demand payment thereof of the maker, and notify the indorser of its non-payment.

Upon the trial the defendant offered to prove that, after the maturity of the note, the plaintiff, acting under the rights reserved in the note, caused the sheriff to take possession of the engine, and thereafter caused the same to be sold under an execution issued upon a judgment recovered against Nighthart upon the note, and purchased the same for $68, and also offered to prove that the engine was at the time of the sale and of the trial worth $500.

*Held,* that as this action was founded on the defendant's negligence, the plaintiff could recover no more than would fully compensate him for the injury sustained thereby.

That the plaintiff, who assumed to have and exercise the rights of the vendor of the engine, must, as between the parties, be treated as holding the engine under a chattel mortgage or pledge.

That, as he had himself purchased the engine at the sale, the defendant was entitled to prove the value thereof, and have it applied in satisfaction of the debt.

That the court erred in rejecting the evidence.

Motion for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict directed in favor of the plaintiff.

*S. Baldwin,* for the plaintiff.

*David B. Hill,* for the defendant.

TALCOTT, P. J.:

This action is brought against the defendant for neglecting to notify the indorser of a note sent to it for collection. The note was given by one Frederick Nighthart to the "American Engine Company," in part payment for a steam engine, and was indorsed by one Gilbert Woodward for the accommodation of Nighthart, and by the American Engine Company transferred to the plaintiff before maturity, with its indorsement. The note was in the following form:

"$450.                              NEW YORK, October 15, 1875.

Fourteen and one-half months after date, I promise to pay to the order of the American Engine Company $450, at seven per centum, at the Havana National Bank, at Havana, N. Y., value received, being in part payment for a portable engine, which engine shall be and remain the property of the owner of this note, until the amount hereby secured is fully paid.

"FRED. L. NIGHTHART.

"No. —, due Jan'y 4, 1877."

After giving evidence touching the indorsement of Woodward, and proving the recovery of a judgment on the note against Nighthart, and an execution with the indorsement of a levy on a portable engine, and the sale thereof for the sum of $68, and notice to Huntingdon, who was the cashier and notary of the bank, of the place of the post-office address of the indorser, Woodward, which was at Odessa, about six miles from Havana, and that Nighthart had the possession of the engine until the commencement of the suit against him, the plaintiff rested, when the counsel for the defendant moved for a nonsuit: 1st. On the ground that the note described in the complaint is not a negotiable note, and that, consequently, no demand of the maker or notice to the indorser was necessary to charge him. 2d. That the plaintiff has failed to prove that he has suffered any injury by the failure to charge Woodward, because the engine company was the first indorser, and primarily liable, and there was no proof that the engine company was not perfectly responsible. The motion was denied by the court, and the defendant excepted.

Only one of these propositions is presented by the counsel for the appellant on this appeal, to wit, that the instrument is not a promissory note.

The note in this case was an agreement to pay the money specified in it to a certain payee, on a day certain, and contained all the requisites of a negotiable promissory note; and the addition of the statement of the consideration, to wit, the engine, with the statement that it was to remain the property of the owner until the note was paid, did not render it non-negotiable. (*Arnold* v. *Rock River, &c. R. R. Co.*, 5 Duer, 207; *Willoughby* v. *Comstock*, 3 Hill, 389; *Hodges* v. *Shuler*, 22 N. Y., 114.)

Another exception, to which attention is called, arises upon offers of proof by the defendant's counsel, which were rejected, to which rejection the defendant excepted. The offers of proof were as follows:

The defendant's counsel offered "to prove that in February, 1877, the plaintiff's attorney instructed the sheriff of Schuyler county to take possession of the engine in question, and that he (the said sheriff) did take possession of it, and that the attorney directed him (the said sheriff) to do so under the reserved right in the note, calling his attention specially to it, saying to him (said sheriff) that the property remained the property of the owner until it (the note) was fully paid, and that in pursuance of that direction the plaintiff's agent did take possession of the property, and held it until the plaintiff recovered the judgment against Nighthart, which has been introduced in evidence, and that then the plaintiff directed the sheriff to levy upon that machine, and sell it upon the execution issued upon that judgment. That the sheriff accordingly did seize the engine, and sold it upon the execution, for $68. That the plaintiff became the purchaser at that sale, for that sum, and that the sheriff applied the purchase-money upon the execution. Also, to prove that the machine was, at that time, and still is, worth the sum of $500. These offers were made by the defendant's counsel, claiming that the plaintiff was accountable to the defendant for the value of the machine, over and above what was applied on the execution, to the extent of satisfying the note."

It will be recollected that the note contained no agreement that

the purchaser of the engine was to be entitled to the possession of the property, but solely that it was to be and remain the property of the *owner of the note* until the amount should be fully paid. Under the arrangement specified in the note, the property in the engine remained in the vendors, or passed to the owner of the note by the indorsement and transfer: (*Ballard* v. *Burgeti*, 40 N. Y., 314; *Herring* v. *Hoppock*, 15 Id., 409.)

The maker of the note had, so far as appears, no interest in the engine which could be sold on execution. (*Herring* v. *Hoppock*, *supra*; *Strong* v. *Taylor*, 2 Hill, 326; *Cole* v. *Mann*, 62 N. Y., 1.)

At most, Nighthart's possession was that of a mere licensee, and when the sheriff, as the agent of the plaintiff, asserted the right of the latter to the possession, and took possession of the engine from Nighthart, before the commencement of the suit against him, there was no title or right of possession remaining in Nighthart which could be the subject of the sale. Yet it is impossible not to see that under the agreement evidenced by the note, the engine, in the hands of the plaintiff, was a mere security for the payment of the note. It was, in fact, a collateral security for the payment of the purchase price.

Though not technically a chattel mortgage, the note gave rise to relations between the conditional vendor and his vendee, as between themselves, of a similar character.

It is impossible to believe that the arrangement between the parties contemplated that the vendee should be liable to pay the whole face of the note, while the vendor at the same time retained his title to, and asserted and resumed the possession of the property which formed the entire consideration of the note.

It is settled that if the mortgagee in a chattel mortgage takes possession of the mortgaged property, after a forfeiture of the conditions of the mortgage, it is a satisfaction of the mortgage debt, providing the value of the property is sufficient; but if, upon a *fair sale* of the property less than the amount of the debt be realized, the mortgagee may sue for the balance. (*Stearns* v. *Marsh*, 4 Denio, 227; *Case* v. *Boughton*, 11 Wend., 106.) But if there is no sale of the property mortgaged, or a material irregularity in the sale, the mortgagor is entitled to have the whole value of the prop-

erty applied in satisfaction of the mortgage debt; and as the plaintiff became the purchaser at the sale, the engine would still remain in his hands in the nature of a pledge. (Story on Bailm., § 315; *Duden* v. *Waitzfelder*, 16 Hun, 337.)

We think the vendor, or, in this instance, the owner of the note, who assumed to have and to exercise the rights of the vendor of the engine, cannot be in a better position as between the parties, in respect to the property which he held as a collateral security for the payment of the note, than though he simply held a mortgage or pledge of the engine.

In an action for neglecting to protest a note, whereby the liability of an indorser has been lost, the party sued has a right to show on the question of damages, any such state of facts as will tend to show that the loss of the plaintiff has been less than the face of the obligation of the maker.

The general rule is, that in an action for negligence the plaintiff can recover no more than the amount which will fully compensate him for the injury sustained by the negligence in question. And in an action of this particular character, the defendant may show that the creditor holds collateral securities for the payment of the debt, to which he may resort in diminution of the damages which would *prima facie* appear to have been sustained by the negligent omission to charge the indorser. (*First National Bank* v. *Fourth National Bank*, 77 N. Y., 320, 328, 329; *Borup* v. *Mininger*, 5 Minn., 523; *Allen* v. *Suydam*, 20 Wend., 321.)

In this view, a majority of the court think the evidence offered should have been admitted on the question of damages, and that the rejection thereof was error, for which a new trial must be granted.

Present—TALCOTT, P. J., SMITH and HARDIN, JJ.

New trial granted, costs to abide the event.