NATIONAL BANK v. GARY.

1. A note duly dated and signed by its maker, without seal, in words following: "On the first of November, 1877, I promise to pay to M. W. Gary, or order, without offset, eight hundred and eighty-six dollars, for value received, with interest from date, interest after maturity at the rate of one

per cent. per month, having deposited with said M. W. Gary, as collateral security, seven hundred and thirty-five dollars Greenville and Columbia railroad second mortgage coupons, past due. And in case this note shall not be paid when due, I hereby give the said M. W. Gary authority to sell the said security, or any part thereof, for my account, on the maturity of this note, or at any time thereafter, at public or private sale, at his discretion, without advertising the same, and to apply so much of the proceeds of said security to the payment of this note as may be necessary to pay the same, with all interest due thereon, and also the payment of all expenses attending the sale of the said security. If the net proceeds of the said security shall not cover the amount due on this note, I hold myself bound to pay the balance forthwith, after such sale, with interest at the rate of one per cent. per month," is a promissory note, and negotiable.

2. *Semble.* An endorsement, in blank, of a negotiable note renders the endorser liable to every subsequent holder; and in the absence of fraud or mistake, such liability cannot be affected by parol evidence.

---

Before FRASER, J., Edgefield, October, 1880.

Action by the First National Bank of Charleston, endorsee, against M. W. Gary, endorser, commenced in April, 1879. The charge of the judge to the jury is not stated in the brief—only the plaintiff's requests to charge. Of these, five in number, only the two following are material to the points considered by this court:

1. " That the instrument sued upon in this action is a negotiable instrument, and if the defendant, for value, wrote his name upon the back of said instrument, then said defendant became liable as endorser, unless said endorsement was obtained by the fraud or deceit of the plaintiff.

2. " That the instrument sued upon is a promise to pay a sum, fixed in said instrument, without regard to the sale of the securities mentioned in said instrument; that the instrument imposed no obligation upon the holder of the same to sell said securities before demanding and requiring payment of said instrument from the maker or endorser."

These requests were both refused, and after verdict for defendant and judgment thereon, plaintiff appealed to this court, alleging error, *inter alia,* in refusing the above-stated requests.

A motion by defendant to dismiss this appeal was refused. *Bank* v. *Gary*, 14 *S. C.* 571.

*Messrs. C. L. Woodward, Buist & Buist*, for appellants.

*Mr. W. T. Gary*, contra.

This instrument is not a promissory note according to the definitions. 2 *Blacks. Com.* 467; *Chit. Bills* 132; 84 *Pa. St.* 407; 1 *N. & McC.* 102, 255; 2 *Id.* 585; *Cheves* 92; 1 *Spears* 127; 1 *Strobh.* 44; 9 *Rich.* 299; 12 *Id.* 445. It is not "simple, certain, unconditional and not subject to any contingency." 19 *Wall.* 560; 4 *Moore* 471; 1 *Dan. Neg. Inst.*, § 50; 47 *N. Y.* 661; 24 *Ga.* 287; 5 *T. R.* 482; 2 *Miles* 442. The contract must be only for the payment of money, or it is not negotiable. 1 *Dan. Neg. Inst.*, § 59, and authorities cited; 77 *Pa. St.* 131; 84 *Id.* 407; 1 *Bay* 173. It is too heavily burdened for a promissory note. The rule laid down in 1 *Dan. Neg. Inst.*, § 59, that a superadded agreement, which only facilitates the means of collection, does not destroy the negotiability of the instrument, is not sustained by the South Carolina decisions, *supra*.

November 27th, 1882. The opinion of the court was delivered by

MR. JUSTICE MCIVER. This was an action brought by the plaintiff, as endorsee, against M. W. Gary, as endorser, of a paper, of which the following is a copy:

"$886.          CHARLESTON, S. C., July 31st, 1877.

"On the first of November, 1877, I promise to pay to M. W. Gary, or order, without offset, eight hundred and eighty-six dollars, for value received, with interest from date, interest after maturity at the rate of one per cent. per month, having deposited with M. W. Gary, as collateral security, seven hundred and thirty-five dollars Greenville and Columbia railroad second mortgage coupons, past due. And in case this note shall not be paid when due, I hereby give the said M. W. Gary authority to sell the said security, or any part thereof, for my account, on the

maturity of this note, or at any time thereafter, at public or private sale, at his discretion, without advertising the same, and to apply so much of the proceeds of said security to the payment of this note, as may be necessary to pay the same, with all interest due thereon, and also the payment of all expenses attending the sale of the said security. If the net proceeds of the said security shall not cover the amount due on this note, I hold myself bound to pay the balance forthwith, after such sale, with interest, at the rate of one per cent. per month.

(Signed) " W. J. MAGRATH,

"*Pres't Greenville and Columbia R. R. Co.*"

(Endorsed) " M. W. GARY."

The fundamental and controlling question made by this appeal is, whether the paper sued on is a negotiable instrument? The Circuit judge held that it was not, and the appellant alleges that there was error in so holding. The first part of the paper, down to the first period, is nothing more nor less than a note, with a recital of the fact that certain railroad coupons had been deposited with the payee as collateral security for the payment of the amount which the maker promised to pay. It is an absolute promise to pay a certain sum of money, at a certain time, to a certain person therein named, or his order. There is nothing conditional or uncertain about it, and it therefore comes up, fully, to the definition of a promissory note, (*Story Prom. N.*, § 1, and 1 *Dan. Neg. Inst.*, § 28, *et seq.*,) and being payable to the payee or order, and being open—that is, unsealed, it is negotiable.

The only remaining inquiry, so far as this part of the paper is concerned, is whether the additional words, containing a mere recital of the fact that the payment of the sum promised has been secured by certain specified security, deprives it of its character as a negotiable instrument. It will be observed that these additional words constitute no additional agreement, nor do they in any way qualify, or render doubtful or uncertain, the preceding absolute promise to pay. They do not incorporate into the paper any terms which can, by any possibility, destroy or render uncertain any of the essential elements which are necessary to

make up a negotiable note. They are a mere recital of a fact which can have no influence upon the promise to pay, and we are unable to see any reason why the addition of such words should affect the negotiability of the instrument. Such, too, seems to be the result of the authorities. *Wise* v. *Charlton*, 4 *Ad. & E.* 786; *Fancourt* v. *Thorn*, 9 *Ad. & E.* (*N. S.*) 312; *Towne* v. *Rice*, 122 *Mass.* 67.

The next inquiry is whether the remainder of the paper, by which the maker gives to the payee authority to sell the collaterals in case the sum promised is not paid at maturity, and apply the proceeds of such sale to the payment of the amount due as well as to the expenses of such sale, and an obligation to pay whatever balance may be due, after the net proceeds of the sale are so applied, deprives the paper of its negotiability. Here, too, it will be observed that these additional words cannot in any way affect the terms of the original promise, so as to import into it any element of uncertainty, either as to the amount to be paid, the time of payment, the person to whom payment is to be made, or the medium of payment. In fact, these words import nothing more than an agreement which the law would imply from the fact that collaterals had been deposited with the payee to secure the amount promised, and may be regarded as surplusage, except, perhaps, the authority to sell the collaterals "without advertising," and this, so far from clogging, or in any way impeding, the payee in the enforcement of his rights, would have an exactly contrary effect, and would tend to render more certain the payment of the note at maturity, which is one of the things which impart to a negotiable paper its peculiar value. We do not perceive, therefore, how these additional words can deprive the paper in question of its negotiable character.

This view is supported by the weight of authority. In *Story Prom. N.*, § 17 (*8th Ed.*), it is said: "An instrument in terms and form a negotiable promissory note does not lose that character, because it recites that the maker has deposited collateral security for its payment, which he agrees may be sold in a certain manner specified, and that he would pay the balance." In 1 *Dan. Neg. Inst.*, § 59, that eminent author, while admitting the general rule to be that a negotiable note must be for the pay-

ment of money only, and "if any other agreement of a different character be engrafted upon ·it, it becomes a special contract clogged and involved with other matters, and has been deemed to lose thereby its character as a commercial instrument," adds: "But at the present time, we think, that this general rule is subject to the qualification, that if the superadded agreement do not impair the certainty of the promise to pay the certain amount named, but only facilitates the means of its collection, it does not, in any degree, destroy the negotiability of the instrument." And in the succeeding sections he cites the cases in which such superadded agreements, as for example, authority to confess judgment, waiver of stay and exemption laws, or stipulations to pay collection fees, have been held not to impair the negotiability of the paper.

It seems to us, however, that, while agreements authorizing a confession of judgment, or a waiver of stay and exemption laws, do come strictly within the qualification stated, inasmuch as such agreements cannot in any way affect the certainty of the promise to pay, and only facilitate the collection of the amount promised, the same cannot be said of a stipulation to pay collection fees, for that does import into the contract an element of uncertainty as to the amount which the maker promises to pay, and ought, therefore, to deprive the paper of its character as a negotiable instrument. Upon the same principle a power of attorney to sell collaterals may be incorporated in a note without impairing its negotiability, even though it may contain a waiver of the necessity for advertising such sale (as in the case now before the court), because such superadded agreement does not in any way impair the certainty of the amount to be paid, and only facilitates its collection.

In *Zimmerman* v. *Anderson*, 67 *Pa. St.* 421, a paper containing a promise to pay a certain sum of money, at a specified time, to a person therein named or order, to which was added these words: "Waiving the right of appeal and of all valuation, appraisement, stay and exemption laws," was held to be negotiable. Read, J., in answer to the argument that these additional words rendered the paper unnegotiable, said: "They do not contain any condition or contingency, but after the note

falls due, and is unpaid, and the maker is sued, facilitate the collection by waiving certain rights which he might exercise to delay or impede it. Instead of clogging its negotiability, it adds to it, and gives additional value to the note." These remarks apply with equal force to the waiver of the necessity for advertising the sale of the collaterals, in the case now before the court.

To the same effect are the remarks of Sharswood, J., in *Woods* v. *North*, 84 *Pa. St.* 407 (24 *Am. Rep.* 201), where, while holding that the insertion of an agreement to pay collection fees, if not paid when due, rendered the note unnegotiable because it imported into the contract an element of uncertainty as to the amount to be paid, said: "Interest and costs of protest after non-payment at maturity are necessary legal incidents of the contract, and the insertion of them in the body of the note would not affect its negotiability. Neither does a clause waiving exemption, for that in no way touches the simplicity and certainty of the paper." See also *Arnold* v. *Rock River Valley Union R. R. Co.*, 5 *Duer* 207; *Osborn* v. *Hawley*, 19 *Ohio* 130.

The cases of *Wallace* v. *Dyson*, 1 *Spears* 127, in which the paper sued on was an obligation for the hire of slaves, and contained, also, a stipulation "to furnish clothing, pay taxes, not to pay physicians' bills," &c.; *Barnes* v. *Gormam*, 9 *Rich.* 297, in which the paper was of like character; and *Read* v. *McNulty*, 12 *Rich.* 445, in which the promise was to pay so much money "with exchange on New York," are clearly distinguishable from the case now under consideration; for in each of those cases the superadded agreement imported an element of uncertainty into the contract as to the amount to be paid, while here, as we have seen, the additional words relied upon do not, in any way, affect any of the certainties required in a negotiable note. We are of opinion, therefore, that the Circuit judge erred in charging the jury that the paper sued on was not a negotiable note.

Under this view of the case the other questions presented by the grounds of appeal cannot fairly arise, and need not, therefore, be considered. The question as to the legal effect of an endorsement in blank by the payee of a negotiable note, and whether it is competent by parol evidence to vary the contract which the law implies from such endorsement, though discussed

in the argument here, does not seem to be raised by any of the grounds of appeal, and, therefore, is not properly before us. The Circuit judge having held that the paper in question was not negotiable, such a question was never reached in the Circuit Court, and, consequently, there was no ruling upon it from which there could be an appeal. But even if it had been raised, we suppose the law upon that subject is too well settled to require any extended notice at our hands; that an endorsement, in blank, of a negotiable note renders the endorser liable to every subsequent holder, and, in the absence of allegation and proof of fraud or mistake, such liability cannot be discharged or limited by parol evidence.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.